The Borough of Warren, a Home Rule Municipality *v.* County Board of Elections of the County of Warren et al.

Ralph J. Papalia, Appellant.

Argued April 23, 1981, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

138

*James C. Blackman,* for appellant.

*William F. Morgan,* with him *Bernard J. Hessley,* for appellees.

*Bernard J. Hessley,* for Amicus Curiae, League of Women Voters of the Warren Area.

Opinion by Judge MacPhail, May 4, 1981:

This case is before us on an appeal from the order of the Court of Common Pleas of Warren County which held that a petition for a referendum to amend the Home Rule Charter of the Borough of Warren (Borough) should be set aside and not placed on the ballot for presentation to the electors at the primary election on May 19, 1981.[1]

It appears from the limited record available to us that the Borough adopted a Home Rule Charter (Charter) pursuant to the provisions of the Home Rule Charter and Optional Plans Law (Act), Act of April 13, 1972, P.L. 184, *as amended,* 53 P.S. §1-101 *et seq.* The effective date of the Charter was the first Monday of January, 1978.

On February 18, 1981, Appellants filed a petition with the Board of Elections of Warren County

---

[1] A special panel of this Court was convened to hear election cases and sat for this purpose on April 23, 1981.

(Board) for a referendum to amend the Charter. The amendments, if adopted by the electors, would increase the number of members on the council, provide for their election by wards or districts rather than at-large and provide for the discretionary compensation of council members. The amendments would also change somewhat the duties of the mayor.

The Board approved the petition and directed that it be placed on the ballot whereupon objectors filed a petition to dismiss the petition for a referendum and an action in equity to enjoin the Board from placing the proposed amendment on the ballot. Both matters were consolidated by the Court of Common Pleas and after argument thereon the order here appealed from was entered.

The issue presented to us is whether the petition for referendum, if adopted, would change the "form of government" in which event the referendum would be barred by the provisions of Section 218 of the Act, 53 P.S. §1-218 which provides that the voters may not vote on a question "changing the form of government" until five years after the Charter has been in effect.

In the opinion in support of his order, the trial judge concluded that the changes contemplated by the proposed referendum would indeed change the form of government voted upon by the electors of the Borough. We agree.

Appellants contend that the referendum does not change the form of government but rather is an attempt to amend an existing charter as provided in Section 221 of the Act, 53 P.S. §1-221.[2] Appellants

---

[2] Section 221 reads as follows:

The procedure for amending a home rule charter or optional plan of government shall be through the initiative procedure and referendum or ordinance of the governing body as hereinafter provided for in this act.

contend that the five year bar set forth in Section 218 is inapplicable to the amendments proposed by them to the Borough's existing Home Rule Charter.

When first enacted the Act offered several choices of form of government to the various municipalities in the Commonwealth: they could continue under their present form of government; they could adopt a Home Rule Charter; or they could select several optional plans as set forth in Articles V through IX of the Act, 53 P.S. §1-501 *et seq.* The electors of the Borough voted for the home rule charter *form* of government in 1977 to be effective in 1978. That *form* of government was a choice made by them among those of no change, home rule charter and the various options set forth in the Act.

The definition section of the Act, Section 102, 53 P.S. §1-102 defines ''optional forms'' as a ''general description including both home rule charters and optional plans.'' Section 219 of the Act, 53 P.S. §1-219 provides, we think, the controlling language to dispose of the issue now before us. It is there provided that

> For the purposes of this act, each of the optional forms of government provided by this act and each of said optional forms as modified by any available provisions concerning size of council, election of municipal officials, the basis for electing councilmen, is hereby declared to be a complete and separate *form of government* provided by the Legislature for submission to the voters of the municipality. (Emphasis added.)

We construe the foregoing language to mean that once the electors have put in place their home rule charter or optional plan of government including provisions for the size of the council and the basis for

electing them that is a "complete and separate *form of government*" not subject to change by the electors for five years.

It is true that such a construction of the statutory language seems to render inoperative for all practical purposes the provisions of Section 221 relating to amendments to a home rule charter but we are satisfied that the legislature wanted to provide a reasonable testing period during which citizens of a municipality would give their chosen form of government a fair chance to succeed rather than having those citizens whipsawed back and forth by suggestions that something else would be a better choice.

ORDER

AND Now, this 4th day of May, 1981, it is ordered that the order of the Court of Common Pleas of Warren County, entered March 3, 1981, be and the same is affirmed.